IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NOV 3 0 2012

Stuart A. Romm,
    Petitioner,

v.    1:12cv88 (GBL/TCB)

Eric Wilson,
    Respondent.

## MEMORANDUM OPINION

This Matter comes before the Court on a Motion for Summary Judgment filed by respondent Eric Wilson. Stuart A. Romm, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging lack of due process in institutional disciplinary proceedings. On June 6, 2012, respondent filed a motion for summary judgment with a supporting memorandum of law and exhibits. Romm was advised of his right to file responsive materials, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). Romm submitted his opposition to the motion for summary judgment and a memorandum on June 27, to which respondent replied on July 2. For the reasons which follow, respondent's Motion for Summary Judgment will be granted, and summary final judgment will be entered in respondent's favor.

### I. Background

The following material facts are uncontroverted. On February 26, 2011, during Romm's former confinement at FCI Ft. Dix, a unit officer observed him bending over and sighing in pain. Romm told the officer that he had been involved in a physical altercation with another inmate,

1

and the unit officer observed injuries on Romm consistent with his statement. Romm was escorted to the medical department for assessment and treatment. Resp. Ex.1 at ¶ 7.[1]

After Romm returned from the medical department, he was interviewed by Lt. M. Hall. Romm stated that he was attacked by fellow inmate Lattanzio, with whom Romm allegedly had had prior verbal confrontations over Romm's conviction of sex crimes. Romm reported that on this occasion he was walking in the hallway towards his room when Lattanzio confronted and struck him, and he fell to the floor. Lattanzio then struck Romm several more times in the head and body. When the interviewer asked Romm if he had actively engaged in the altercation, Romm stated that he grabbed at Lattanzio's face and genitals several times. Lattanzio had scratches on his face and head which were consistent with Romm's statement. Id., ¶ 8.

Lt. Hall also interviewed inmate Lattanzio concerning the incident. Lattanzio refused to answer most questions or to provide further information, but when asked if he was involved in a physical altercation with Romm, he stated that he was in a fight. Id., ¶ 9. Both Romm and Lattanzio were issued incident reports and charged with the disciplinary infraction of fighting, a violation of Code 201, and both were placed in the Special Housing Unit ("SHU").

Romm received a copy of the incident report charging him with fighting on February 26, 2011. Id., ¶¶ 10 - 11. On February 28, he appeared before the Unit Disciplinary Committee ("UDC"). The UDC members advised Romm of his rights and gave him a copy of the "Notice of Discipline Hearing Before the DHO," which informed Romm that due to the nature of his

---

[1] Respondent's Exhibit 1 is the sworn declaration of Anthony C. Boyce, a Discipline Hearing Officer employed by the Federal Bureau of Prisons ("BOP") at FCI Ft. Dix. Officer Boyce has held his current position since 2005, and began working for the BOP in October, 1990. Id., ¶ 1. Appended to the declaration are several attachments, which will be referenced in this Memorandum Opinion as "Att." followed by the appropriate number.

charges he would be required to appear before a Disciplinary Hearing Officer. Romm acknowledged receipt of these documents by signing and dating them. Although Romm was advised of his rights to call both a staff representative and witnesses at the UDC hearing, he declined to do so. Id., ¶ 12. At the hearing, Romm testified that Lattanzio approached him from behind and struck him in the face, which caused him to fall to the floor. Romm stated that in an attempt to fend off the blows, he put his hand out and hit Lattanzio in the face. He also testified that he had heard rumors that Lattanzio intended to target him. Id., ¶ 13.

On March 9, 2011, Romm appeared at his DHO hearing, and again waived his rights to a staff representative and to call witnesses. Romm denied the charge against him, and stated that he was curled up in a fetal position on the floor during the altercation and resisted only after Lattanzio pulled on his scalp. Romm stated specifically that he put his free hand in Lattanzio's face and pushed him away. Id., ¶ 15. Further, Romm testified that Lattanzio had attacked him because Romm was convicted of federal sex offenses, and would approach other inmates on the compound while they were speaking with Romm to tell them the nature of Romm's offenses. Romm asserted that he had ignored Lattanzio's "cracks" for two weeks, and that his cellmate had received a note stating that Romm's "ass was going to be kicked." Id.

After considering all of the evidence, including the incident report and investigation, Romm's own statements, a memorandum submitted by Lt. Hall, the report from Romm's medical examination, and photographs of Lattanzio's injuries, the DHO found that Romm had committed the prohibited act of fighting. Specifically, Romm had admitted to staff that he used his hands to strike and grab Lattanzio's face, head and genitals, and Lattanzio's injuries were consistent with those actions. The DHO also based his decision on Romm's own statement that

he took his free hand and put it in Lattanzio's face to push him away. Lastly, the DHO found that injuries Romm sustained to left knuckles supported his active role in the altercation. Id., ¶ 17. However, while the DHO found that the evidence supported the charge that Romm had fought with Lattanzio, it was likely that Lattanzio was the aggressor. Thus, the DHO sanctioned Romm with 7 days disciplinary segregation in the SHU and disallowance of 27 days good conduct credit, while Lattanzio was sanctioned with disallowance of 27 days of good conduct credit, 30 days of commissary privileges, 30 days of e-mail privileges, 30 days of telephone privileges, and 30 days of visiting privileges. Id., ¶ 18.

In this petition for habeas relief pursuant to § 2241, Brown argues that: 1) his right to due process was violated when he was induced to waive his rights to present witnesses and documentary evidence and to staff representation; and 2) the DHO's decision that he committed the prohibited act of fighting was not supported by sufficient evidence. Pet. Mem. at unnumbered p. 1. Respondent does not challenge Romm's claims on the basis of the exhaustion requirement. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986). Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party

4

bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. Romm Was Not Deprived of Due Process

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to prevail on either a procedural or substantive due process claim, inmates

must first demonstrate that they were deprived of "life, liberty, or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). It is well established that prisoners cannot be subjected to arbitrary discipline by prison officials. See Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966). When a loss of statutory good-time credits or solitary confinement is at issue, the Supreme Court has mandated procedural safeguards for prison disciplinary hearings, including advance written notice of charges, written findings, and an opportunity, when consistent with institutional safety and correctional goals, for the inmate to call witnesses and present evidence in his defense. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974); Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990). However, prison inmates have no protected liberty interest in the disciplinary hearing "procedures themselves, only in the subject matter to which they are directed." Ewell v. Murray, 11 F.3d 482, 488 (4th Cir. 1993).

In this case, Romm received all of the due process elements required by Wolff. Specifically, Romm received written notice of the charges he faced when he received a copy of the incident report eleven days before he appeared before the DHO. In addition, five days after the hearing, Romm received a written statement that described the evidence the DHO had relied upon in reaching his decision, as well as the reasons for the recommended sanctions. Resp. Ex. 1, ¶ 4; Att. 3, 7. Romm opted not to call witnesses, present documentary evidence, or avail himself of the opportunity for staff representation before both the UDC and the DHO, and he signed written waivers in both instances. Id., ¶¶ 12, 14; Att. 5, 7. In the instant petition, Romm asserts that he was "induced" to waive these rights "by a failed promise to review and consider a report by BOP staff so Special Investigative Services [("SIS")] at Fort Dix, indicating threats by assailant against Petitioner in advance of the assault." Pet. Mem. at II-1. However, Romm fails to present any evidence to support

this contention, while the DHO attests:

> I deny inmate Romm's allegation that I induced him to waive his rights to presentation of evidence, documentary evidence, and staff representation after I allegedly promised him that I would review and consider a report that indicated that inmate Lattanzio was threatening inmate Romm prior to the altercation. I have no knowledge of such a report, and I do do [sic] not recall discussing such with inmate Romm. Additionally, I made no mention of such a conversation or report in the DHO Report that I composed on or about March 14, 2011. I have no reason to believe that inmate Romm did not willingly waive these rights both at the UDC hearing and the DHO hearing.

Resp. Ex. 1, ¶ 19. Under these circumstances, the Court does not credit petitioner's unsupported allegation that he was improperly induced to waive his procedural due process rights during his disciplinary proceedings.

Moreover, even if petitioner's allegations in that regard were true, it would make no difference. No constitutional violation occurs where a prison official does not assist an inmate in obtaining documentary evidence of his assailant's motive for an attack to bolster his claim that he acted in self-defense. See Squire v. Warden, U.S.P. Leavenworth, 961 F.2d 220 (10th Cir. Apr. 10, 1992) (table; text at 1992 WL 73019). In addition, the DHO attests that even if he had been aware of a report submitted to SIS showing that Lattanzio had threatened Romm prior to the altercation, it would not have changed his finding that Romm committed the prohibited act of fighting. Resp. Ex. 1, ¶ 20. The DHO "was already aware that inmate Romm himself informed staff on three different occasions after the incident that inmate Lattanzio had made previous threats against him." Id. He states that even if Lattanzio did initiate the altercation, that would "not in any way [have] alter[ed]" his "finding that inmate Romm fought back with Lattanzio," because "inmate Romm's own statements about using his hands to strike and grab inmate

7

Lattanzio's face, head, and genitals, in addition to inmate Lattanzio's injuries on his face and head, and inmate Romm's injury on his left knuckles, support the finding that inmate Romm played a more active role than merely protecting himself from injury." Id., ¶ 21.

Since Romm was given the opportunity to present witnesses and documentary evidence and to obtain staff representation at his disciplinary proceeding, and opted to waive those rights, the requirements of Wolff were satisfied, and his right to due process was not compromised.

### B. The Evidence Was Sufficient to Support the DHO's Determination

A decision by a prison disciplinary board satisfies due process if there some evidence in the record to support the board's decision. Superintendent v. Hill, 472 U.S. 445, 454 (1985). Here, as discussed above, the DHO relied on several items of evidence in concluding that Romm engaged in the prohibited act of fighting. Thus, as there patently was "some evidence" to support the finding of a disciplinary violation, due process was satisfied.

In his opposition to the Motion for Summary Judgment, Romm urges the Court to find that several of the DHO's factual findings were erroneous, such that the conclusion that he was guilty of fighting was unsupported, but the Court is not free to take such a step. In Hill, the Supreme Court stressed that "a disciplinary board's factual findings or decisions with respect to appropriate punishment are [not] subject to second-guessing upon review." Id. at 455. Instead, because "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison officials must often act swiftly on the basis of evidence that night be insufficient in less exigent circumstances ... the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456. Here, then, because some evidence - including Romm's own statements - supported the DHO's conclusion that Romm engaged in the

prohibited act of fighting, and because the Court cannot second-guess the DHO's factual determinations, the decision in this case satisfies the requirements of Hill.

Romm insists both in the memorandum supporting his petition and in his opposition to respondent's Motion for Summary Judgement that he was acting only in self-defense when he put his hand in Lattanzio's face. However, such an argument is irrelevant, because "[i]n the context of a prison disciplinary hearing, [an inmate does] not enjoy a substanive due process right to use violence to defend himself." Rudd v. Stansberry, 2011 WL 2970925 at *3 (E.D.Va. July 20, 2011) (Hudson, J.), citing Scruggs v. Jordan, 485 F.3d 934 (7th Cir. 2007); Rowe v. DeBruyn, 17 F.3d 1047 (7th Cir. 1994). Romm's argument in his opposition to the Motion for Summary Judgment that such a right does exist pursuant to the Fourth Circuit's decision in United States v. Gore, 592 F.3d 489 (4th Cir. 2010) is misplaced. Gore is distinguishable because, as Judge Hudson expressly noted in Rudd, it "dealt with a federal criminal prosecution, not a prison disciplinary proceeding." 2011WL 2970925 at *3, citing Wolff, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). The Court explained:

> [Because] there is virtually no support for such a judicially created constitutional right in the criminal law, we believe that manufacturing such a right for application in non-criminal, prison disciplinary proceedings is even less justified. This is particularly so where prison authorities daily face an intractable problem of violence within the prison walls. A right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution. Without disputing or passing on the primacy of the 'right' of self-defense in a criminal law context, we determine that in view of our deference to the administrative discretion of prison authorities, prisoners do not have a fundamental right to self-defense in disciplinary proceedings.

Rudd, 2011 WL 2970925 at *3, quoting Rowe, 17 F.3d at 1052 - 53. Here, then, Romm's attempt to call the DHO's finding of a disciplinary infraction into question because he was acting to defend himself against his assailant must fail.

## IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment will be granted, and summary final judgment will be entered in his favor. An appropriate Order shall issue.

Entered this 30th day of Nnur 2012.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia